UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
NANCY ARROYO and PATRICIA MCMAHON,

                         Plaintiffs,

          -against-                              MEMORANDUM & ORDER
                                                 13-CV-2335(JS)(AKT)
PHH MORTGAGE CORPORATION,

                         Defendant.
--------------------------------------X
APPEARANCES
For Plaintiffs:       Michael E. Herskowitz, Esq.
                      Michael Andrew Lehrman, Esq.
                      Carmel Maseng, Esq.
                      The Hoffman Law Group, P.A.
                      1999 Flatbush Avenue, Suite 201
                      Brooklyn, NY 11234

For Defendant:        Nathaniel I. Kolodny, Esq.
                      Stillman Friedman & Shechtman, P.C.
                      425 Park Avenue, 26th Floor
                      New York, NY 10022

SEYBERT, District Judge:

          Currently pending before the Court are: (1) defendant
PHH Mortgage Corporation's ("PHH") motion to sever and to
dismiss the Amended Complaint (Docket Entry 33), and (2) PHH's
motion to supplement its motion to sever and dismiss (Docket
Entry 52). For the following reasons, PHH's motions to sever
and to supplement are GRANTED and its motion to dismiss is
GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>[1]

This action was initially commenced on April 17, 2013 by plaintiffs Jennifer Cumia ("Cumia"), Nancy Arroyo ("Arroyo"), Patricia McMahon ("McMahon," and together with Cumia and Arroyo, "Plaintiffs"), and John Roes 1-100 against defendants PHH; JPMorgan Chase Bank, N.A.; and Popular Community Bank (collectively "Defendants"). On September 23, 2013, Plaintiffs filed an Amended Complaint which names each of the Plaintiffs and Defendants. (<u>See</u> Docket Entry 27.) Since then, however, the parties have voluntarily dismissed all but Arroyo and McMahon as plaintiffs, and PHH as a defendant.[2] (<u>See</u> Docket Entries 32, 40.)

Plaintiffs are homeowners who assert that Defendants committed various "illegal" acts in the creation and servicing of their home mortgage loans. (<u>See</u> <u>generally</u> Am. Compl.) Plaintiffs allege that, during the origination of their loans, Defendants offered terms that Plaintiffs would not have accepted had it not been for Defendants' misrepresentations. (Am. Compl. ¶¶ 29-30.) Moreover, Defendants did not require sufficient

---

[1] The following facts are drawn from the Amended Complaint and the documents incorporated therein and are--to the extent appropriate--presumed to be true for the purposes of this Memorandum and Order.

[2] Although there have been voluntary dismissals against some parties, the Amended Complaint refers to "Plaintiffs" and "Defendants." Therefore, the Court will use those terms as they were used in the Amended Complaint.

financial documentation, and ultimately provided mortgages unsuitable to Plaintiffs' incomes. (Am. Compl. ¶¶ 31, 33.)

Ultimately, Plaintiffs defaulted on their mortgage payments and requested loan modifications through Defendants. (Am. Compl. ¶¶ 2-3.) Defendants provided Plaintiffs with application materials for a modification. (Am. Compl. ¶ 4.) They represented to Plaintiffs that after completion of the materials, Plaintiffs would be provided terms to make payments under a "trial modification." (Am. Compl. ¶ 5.) If Plaintiffs made those payments, there would be a permanent modification. (Am. Compl. ¶ 5.)

Plaintiffs allege that they accepted Defendant's loan modification offers and began performance, thus forming a contract. (Am. Compl. ¶ 7.) Specifically, the Amended Complaint asserts that "Plaintiffs either provided all of the requested documentation in support of their loan modification application to Defendants, and otherwise met all the conditions precedent pursuant to a trial modification offer, or attempted to do so in good faith, but faced substantial interference from Defendants." (Am. Compl. ¶ 8.) For example, Arroyo submitted documentation to PHH in support of her application, but was informed that her application was incomplete. Arroyo submitted the materials again, but PHH again denied her application as incomplete. (Am. Compl. ¶ 10.) According to Plaintiffs, these

"missing document requests" were in actuality a policy instituted by Defendants to "overly burden Plaintiffs' compliance with modification terms." (Am. Compl. ¶ 11.)

In addition, Plaintiffs allege that they were denied trial modifications on baseless claims regarding financial status. (Am. Compl. ¶ 12.) In April 2013, for example, PHH denied Arroyo a loan modification on the grounds of insufficient income. (Am. Compl. ¶ 12.) "In cases where trial modification was not given, Defendants either gave no explanation for the denial, or alleged that Plaintiffs did not provide the necessary documentation for processing or review, as was the case with Plaintiff Nancy Arroyo." (Am. Compl. ¶ 13.) Plaintiffs allege that Defendants had a financial incentive to encourage foreclosure or short sale, rather than loan modification. (Am. Compl. ¶¶ 14-16.)

Furthermore, under the Home Affordable Modification Program ("HAMP") lenders must conduct a Net Present Value ("NPV") calculation of the property as modified and unmodified. (Am. Compl. ¶ 19.) "When a modification has an NPV equal to, or greater than, the amount likely to be obtained from sale in foreclosure, lenders must offer a modification. However, Defendants' CDS/CDO ["Credit Debt Swap" and "Collateralized Debt Obligations"] create a financial offset beyond the amount that could reasonably be obtained through sale in foreclosure." (Am.

Compl. ¶ 19.) Thus, Defendants have "created an alarming conflict of interest as part of their loss-sharing agreements in the securitization of mortgages, incentivizing them to negotiate with the Plaintiffs in bad faith." (Am. Compl. ¶ 16.) Moreover, Defendants do not set specific standards for determining who will be granted loan modifications. (Am. Compl. ¶ 21.)

Plaintiffs assert the following causes of action: (1) Count One: Breach of Contract; (2) Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Count Three: Fraudulent Concealment; (4) Count Four: Fraud for Demanding and Collecting Monthly Note Payments under False Pretenses; (5) Count Five: Violations of Section 349 of the New York General Business Law ("GBL"); (6) Count Six: Violations of the Federal Truth in Lending Act ("TILA"); (7) Count Seven: Fraud in the Inducement; and (8) Count Eight: Violations of the Real Estate Settlement Procedures Act ("RESPA").

<u>DISCUSSION</u>

PHH now moves to sever Plaintiffs Arroyo and McMahon and to dismiss the Amended Complaint. The Court will first address the issue of severance before turning to PHH's motion to dismiss.

I. Severance

    A. Federal Rule of Civil Procedure 20

        1. Legal Standard

Rule 20(a)(1) permits the joinder of multiple plaintiffs in an action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1). These elements are preconditions and both must be met for joinder to be proper. Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("As is clear from the plain language of [the Rule], both criteria must be met for joinder to be proper."). While "[t]he requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding, the requirements of the rule still must be met and constrain the Court's discretion." Kalie v. Bank of Am. Corp., --- F.R.D. ----, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (alteration in original) (internal quotation marks and citation omitted). "If a court concludes that [parties] have been improperly joined under Rule 20, it has

broad discretion under Rule 21 to sever [those] parties . . . from the action." Id.

In determining whether claims arise out of the same "transaction" or "occurrence" under Rule 20(a), "courts are to look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" Id. (quoting United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979)). Plaintiffs bear the burden of demonstrating that joinder is proper under Rule 20(a). Deskovic, 673 F. Supp. 2d at 159.

2. Application

Here, PHH asserts that Arroyo's and McMahon's respective claims do not arise out of the same transaction or occurrence. (See PHH's Br., Docket Entry 34, at 4-7.) Arroyo and McMahon raise several arguments in opposition, primarily asserting that PHH has cited cases involving only mortgage loan origination, not mortgage loan modification and that because only PHH now remains as a defendant, "Plaintiffs' relationship with PHH is not contested."[3] (Pl.'s Opp. Br., Docket Entry 44, at 4.)

---

[3] Despite Arroyo and McMahon's argument, the Amended Complaint clearly relates to modification and origination. Their attempt

Arroyo and McMahon's arguments in opposition are unavailing.[4] In fact, after Arroyo and McMahon filed their opposition, but before the instant Memorandum and Order, the undersigned issued an Order severing the plaintiffs in an action involving claims regarding mortgage loan modification and the same Plaintiffs' counsel. See generally D'Angelis v. Bank of Am., N.A., No. 13-CV-5472, 2014 WL 202567 (E.D.N.Y. Jan. 16, 2014). There, as here, the Court notes that it is well-settled that separate loan transactions are separate "transactions or occurrences" and generally are not sufficiently related to constitute a "series of transactions or occurrences" within the meaning of Rule 20(a)(1). See id. at *2 (collecting cases). Moreover, even claims asserted by separate plaintiffs against a common defendant do not arise out of the same "transaction" or "occurrence." See id. at *2 (quoting Kalie, 2013 WL 4044951, at *4).

The Court takes this opportunity to note that several courts across this District have ordered severance in similar actions--and rejected similar arguments in opposition--involving

---

to suggest otherwise is belied by the clear language of the Amended Complaint. (See Am. Compl. ¶¶ 29-43.)

[4] The Court notes that, even though PHH is the only remaining defendant, PHH's relationship with each of the remaining plaintiffs is not as apparent as the opposition brief suggests. For example, the Amended Complaint asserts allegations against "Defendants."

Plaintiffs' counsel.  See, e.g., Martin v. Bank of Am., No. 13-CV-2350, 2014 WL 977653 (E.D.N.Y. Mar. 12, 2014); Green v. Citimortgage, Inc., No. 13-CV-2341, 2013 WL 6712482 (E.D.N.Y. Dec. 18, 2013)[5]; Traina v. HSBC Mortg. Servs., Inc., No. 13-CV-2336, 2013 WL 6576856 (E.D.N.Y. Dec. 12, 2013).  Accordingly, the claims of McMahon are SEVERED pursuant to Rule 20 and DISMISSED WITHOUT PREJUDICE to commencing a separate action.

B. Federal Rule of Civil Procedure 21

Finally, even if Arroyo and McMahon satisfied Rule 20(a), the Court would reach the same result in exercising its discretion under Rule 21 of the Federal Rules of Civil Procedure.  Rule 21 provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party . . . [and] sever any claim against any party."  FED. R. CIV. P. 21.

In deciding whether to sever a claim under Rule 21, courts generally consider, in addition to the preconditions set forth in Rule 20(a), "[1] whether settlement of the claims or judicial economy would be facilitated; [2] whether prejudice would be avoided if severance were granted; and [3] whether

---

[5] PHH's motion to supplement (Docket Entry 52) advises the Court of the recent opinion in Green.  While PHH styles its submission as a "motion," a motion is unnecessary.  In any event, it is unopposed, and the case is one that the Court would have reviewed in conducting its own research.  Accordingly, the motion to supplement is GRANTED.

different witnesses and documentary proof are required for the separate claims." <u>Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.</u>, 288 F.R.D. 331, 333 (S.D.N.Y. 2013) (quoting <u>Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.</u>, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)). "A court should consider whether severance will 'serve the ends of justice and further the prompt and efficient disposition of litigation.'" <u>Crown Cork</u>, 288 F.R.D. at 332 (quoting <u>T.S.I. 27, Inc. v. Berman Enters., Inc.</u>, 115 F.R.D. 252, 254 (S.D.N.Y. 1987)); <u>see also In re Ski Train Fire in Kaprun, Austria, on November 11, 2004</u>, 224 F.R.D. 543, 546 (S.D.N.Y. 2004).

Here, Arroyo and McMahon's individual claims will require distinct witnesses and documentary proof. <u>Kalie</u>, 2013 WL 4044951, at *6 (finding that judicial economy was not served by joining mortgage-related claims because "each plaintiff's claims implicate distinct loans, locations, dates and personnel"). Furthermore, settlement of the claims is likely to be facilitated if the claims relating to separate mortgage transactions are litigated separately. <u>See Adams</u>, 2013 WL 5437060, at *4. In addition, "[a] joint trial could lead to confusion of the jury and thereby prejudice defendants." <u>Kalie</u>, 2013 WL 4044951, at * 6 (internal citation and quotation marks omitted). Thus, for these reasons, the Court also finds that

the Rule 21 factors require severance of McMahon's claims, leaving only those of Arroyo.

## II. Dismissal

PHH also moves for dismissal of the Amended Complaint in its entirety, arguing that Arroyo lacks standing, Arroyo has failed to state a claim, and/or that the claims are barred by the applicable statute of limitations.[6]  The Court will first address the applicable legal standards of review before turning to PHH's arguments.

### A. Legal Standards

#### 1. Rule 12(b)(1)

Although PHH does not mention Rule 12(b)(1) specifically, PHH's argument regarding standing raises a question of subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See Morrison v. Nat'l

---

[6] As the Court has severed McMahon's claims, and given that the Amended Complaint alleges very little as to McMahon specifically, the Court will only consider PHH's argument as to dismissal of Arroyo's claims.

Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

### 2. Rule 12(b)(6)

The remainder of PHH's motion addresses dismissal pursuant to Rule 12(b)(6). In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B. Standing and Sufficiency

PHH asserts that Arroyo lacks standing because, inter alia, the Amended Complaint is a generalized pleading and "[a]ll Plaintiffs make all claims against all Defendants notwithstanding a total absence of relationship between the parties." (PHH's Br. at 8.) Given the voluntary dismissals in this action and that the Court has ordered severance of McMahon's claims from those of Arroyo, the Court finds that Arroyo has standing. Moreover, the Amended Complaint includes various examples specific to Arroyo.

Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984); see also U.S. Const., art. III, § 2. "This limitation is effectuated through the requirement of standing." Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471–72, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982)); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990). There are three requirements to establish Article III standing: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Cooper, 577 F.3d at 489; see also Allen, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

"To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" Baur v. Veneman, 352 F.3d 625, 632 (2d Cir.

2003) (quoting <u>Lujan</u>, 504 U.S. at 560); <u>cf.</u> <u>Amnesty Int'l U.S.A.</u> <u>v. Clapper</u>, 667 F.3d 163, 171 (2d Cir. 2011) ("The critical inquiry for standing is whether the plaintiffs are simply citizens with an abstract claim that some action was unlawful, or whether they, in some particular respect not shared by every person who dislikes the action, are injured by that action."). Injury is "concrete and particularized" if it "affect[s] the plaintiff in a personal and individual way," <u>Lujan</u>, 504 U.S. at 560 n.1; <u>accord</u> <u>Baur</u>, 352 F.3d at 632, and injury is "actual or imminent" if the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," <u>City of Los Angeles v.</u> <u>Lyons</u>, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (internal quotation marks and citation omitted).

PHH's standing argument is based, in part, on the fact that the Amended Complaint names multiple plaintiffs and defendants. The Court agrees that there are virtually no allegations specifically pertaining to McMahon. Her claims have been severed, however, and the Court will not consider whether she has standing.

As to Arroyo, there is enough in the Amended Complaint to find standing. The Amended Complaint alleges her relationship to PHH and alleges that PHH currently services her mortgage. (Am. Compl. ¶ 47.) Moreover, it also includes various examples of Arroyo's experiences with PHH and how she

claims that PHH committed the alleged violations. (See, e.g., Am. Compl. ¶¶ 10, 12-13.) Although the Court agrees with PHH's assertion that the Amended Complaint is lacking in some respects, these issues can--and will--be addressed on a motion to dismiss. See Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990))); accord Butler v. Suffolk Cnty., 289 F.R.D. 80, 90-91 (E.D.N.Y. 2013).

Accordingly, PHH's motion to dismiss for lack of standing is DENIED.

C. Breach of Contract

PHH moves for dismissal of the breach of contract claim, asserting that Arroyo does not allege the existence of a contract and that the Amended Complaint fails to identify the contract and contractual provisions breached. Specifically, PHH claims that the Amended Complaint acknowledges that Arroyo did not have a loan modification agreement with PHH, and therefore there was no contract. Plaintiff, however, asserts that she can maintain a breach of contract claim because she satisfied conditions precedent for a temporary modification agreement,

thereby legally creating a contract.  (Pl.'s Opp. Br. at 14.)
The Court finds Arroyo's argument unavailing.

The pleading requirements are governed by New York
law, which provides that "a plaintiff bringing a breach of
contract claim must allege '(1) the existence of a contract, (2)
performance by the party seeking recovery, (3) non-performance
by the other party, and (4) damages attributable to the
breach.'"  Abraham v. Am. Home Mortg. Serv., Inc., 947 F. Supp.
2d 222, 235 (E.D.N.Y. 2013) (quoting Schlessinger v. Valspar
Corp., 817 F. Supp. 2d 100, 105 (E.D.N.Y. 2011)); see Mendez v.
Bank of Am. Home Loans Serv., LP, 840 F. Supp. 2d 639, 647
(E.D.N.Y. 2012).  The federal law, though, provides for the
pleading requirements.  Mendez, 840 F. Supp. 2d at 647.
Particularly, Federal Rule of Civil Procedure 9 governs the
pleading of conditions precedent.  That Rule provides that "it
suffices to allege generally that all conditions precedent have
occurred or been performed.  But when denying that a condition
precedent has occurred or been performed, a party must do so
with particularity."  FED. R. CIV. P. 9(c).

Here, Arroyo alleges that she inquired about mortgage
assistance and modification and that PHH provided a
"modification application package."  (Am. Compl. ¶¶ 3-4.)  She
further avers that the package required that she submit certain
documentation and that PHH "represented" that, upon submission

17

and review of a completed modification package, she "would be given terms to make payments as part of a trial modification." (Am. Compl. ¶ 5.) According to Arroyo, she submitted the necessary documentation and completed the modification application package, only to be denied by PHH. For example, in April 2013, Arroyo submitted documentation to PHH in support of her application, but PHH informed her that particular documents were still missing. (Am. Compl. ¶ 10.) Arroyo resubmitted the documents. (Am. Compl. ¶ 10.) Also in April 2010, PHH denied Arroyo any loan modification citing insufficient income. (Am. Compl. ¶ 12.) Again in July 2013, despite the fact that Arroyo had resubmitted the purported missing documentation, PHH informed Arroyo that documents remained missing. (Am. Compl. ¶ 10.) Thus, Arroyo alleges that she submitted all necessary materials and otherwise satisfied the requirements of the modification application package. The Amended Complaint refers to such satisfaction as having fulfilled the "conditions precedent," thereby forming a contract. (See, e.g., Am. Compl. ¶¶ 7-8.)

PHH maintains, in essence, that there was no contract formation between it and Arroyo. The Court agrees. As PHH correctly points out, the Amended Complaint acknowledges that Arroyo was not accepted to a loan modification program. (See Am. Compl. ¶ 10 ("Plaintiff Arroyo was then removed from the

modification program for what Defendant called an incomplete modification package."); PHH's Br. at 11-12.)  Notably, Arroyo seeks relief for breach of the loan modification agreement. (Am. Compl. ¶ 64.)  In support of her assertion that a contract was formed, Arroyo cites to three cases, which she argues "affirm[ ] that meeting the conditions precedent <u>for a temporary modification agreement</u> creates binding contracts . . . ." (Pl.'s Opp. Br. at 14 (emphasis added).)  Here, though, there was no temporary modification agreement.

In two of the cases to which Arroyo cites--<u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547 (7th Cir. 2012) and <u>Corvello v. Wells Fargo Bank, NA</u>, 728 F.3d 878 (9th Cir. 2013)-- the defendant sent the plaintiffs a trial period plan agreement ("TPP Agreement"), which specified the terms of the trial period and provided that, if certain conditions were met, the defendant would offer a permanent loan modification.  Also relevant is <u>Mendez v. Bank of America Home Loans Servicing, LP</u>, in which the defendant provided the plaintiff with a home loan modification offer which would reduce the plaintiff's monthly mortgage payments from $2,794.50 per month to $984.94 per month plus taxes and insurance.  840 F. Supp. 2d at 643.  The offer letter provided that "To Accept the Enclosed Modification," the plaintiff would need to provide certain documentation and comply with other conditions precedent.  <u>Id.</u>  The plaintiff complied

with those conditions precedent, and Judge Arthur D. Spatt held that the plaintiff's claim for breach of the loan modification contract withstood the defendant's motion to dismiss. Id. at 660-61.

In this case, though, Arroyo seems to allege that she was merely at the application stage, seeking the terms of a temporary modification agreement. In fact, she makes clear that PHH never did provide her with any such terms. (See Am. Compl. ¶ 59 ("Defendants often would not provide trial modification terms to Plaintiffs, citing Plaintiffs' alleged shortcomings in the modification process, or failure to meet financial criteria.").) As Corvello sets out, "the process of applying for and receiving a permanent modification" includes several steps, the first step of which is that a borrower provide a servicer with information. 728 F.3d at 880 (citing Treasury Supplemental Directive 09-01). "[T]he servicer must evaluate whether the borrowers qualify for a loan modification" and, "[f]or borrowers who appear eligible to participate in HAMP, the servicer then prepares a TPP." Id. The TPP then requires additional documents and payments in accordance with the plan. Id. at 880-81. It is at that point that the servicer must either confirm the borrower's eligibility for permanent modification or alert the borrower that she does not qualify for permanent modification. Id. at 881. In short, Arroyo's cited

precedent addresses instances in which the servicer promised permanent modification--or at least prompt notification of ineligibility for permanent modification--if the conditions precedent of the TPP were met.

Such a scenario is not what Arroyo has presented in her Amended Complaint. To characterize the provision of documents as a "condition precedent" is somewhat of a mischaracterization. Moreover, the terms of the contractual arrangement, if any, are insufficiently pled. At best, Arroyo alleges that "Defendants represented to Plaintiffs that, following the submission and review of a completed modification package, Plaintiffs would be given terms to make payments as part of a trial modification." (Am. Compl. ¶ 5.) Whether this was a definite promise or a mere possibility is unclear. See Sholiay v. Fed. Nat'l Mortg. Ass'n, No. 13-CV-0958, 2013 WL 5569988, at *3 (E.D. Cal. Oct. 9, 2013) (holding that there was no contract for a loan modification because a letter from defendant to plaintiff stated that if the plaintiff qualified, he may be offered a TPP). Furthermore, as best the Court can make out from the vague allegations, Arroyo and PHH appear to have been involved in communications akin to negotiations. See, e.g., Calhoun v. CitiMortgage, Inc., No. 13-CV-8042, 2014 WL 274122, at *3 (N.D. Ill. Jan. 24, 2014) (distinguishing Wigod because, although the plaintiff stated that he entered into a

trial payment plan, a forbearance agreement, and a loan modification agreement with CitiMortgage, "it [wa]s unclear to the court whether there was any agreement at all regarding 1633 E.91st based on the documents [plaintiff] attached to his complaint").

As Arroyo has not sufficiently pled the contractual provisions purportedly breached by PHH, PHH's motion to dismiss is GRANTED in this regard, and Arroyo's breach of contract claim is DISMISSED WITHOUT PREJUDICE. See Abraham, 947 F. Supp. 2d at 235 ("Having failed to adequately plead the terms of any contract or contracts, [Plaintiff's] breach of contract claim fails as a matter of law.").

D. Breach of the Covenant of Good Faith and Fair Dealing

PHH further moves for dismissal of Arroyo's claim for breach of the covenant of good faith and fair dealing because, inter alia, Arroyo does not allege the existence of a valid contract upon which such a claim could be based and, even if she did, it would be duplicative of a breach of contract claim. The Court agrees.

Arroyo must first allege the existence of a valid contract in order to maintain her claim, which she has not done. See Kapsis v. Am. Home Mortg. Serv., Inc., 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013). Moreover, assuming, arguendo, that Arroyo could state a claim for breach of contract, her claim for breach

22

of the covenant of good faith and fair dealing is wholly duplicative. It is well-settled that such a duplicative claim cannot stand. See id. at 452 n.7; Mendez, 840 F. Supp. 2d at 652 (collecting cases). Arroyo's attempts to distinguish her breach of contract claim and her claim for breach of the covenant of good faith and fair dealing are not persuasive. (See Pl.'s Opp. Br. at 18-19.) And the Amended Complaint makes abundantly clear that her claim fully overlaps with any allegations of a breach of contract. (See Am. Compl. ¶ 69 ("Defendants breached the implied covenant of good faith and fair dealing contained in their loan modification agreements."); id. ¶ 70(a) ("Defendants further breached the implied covenant of good faith and fair dealing by . . . Failing to make a good faith effort to fulfill Defendants' contractual obligations . . .").) Accordingly, PHH's motion to dismiss in this regard is GRANTED, and Arroyo's claim for breach of the covenant of good faith and fair dealing is DISMISSED WITH PREJUDICE.

E. Fraud-Based Claims

PHH additionally seeks dismissal of Arroyo's third claim for fraudulent concealment, fourth claim for fraud in demanding and collecting monthly note payments under false pretenses, and seventh claim for fraud in the inducement because Arroyo has not pled these claims with the requisite specificity. The Court agrees.

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). If there are multiple defendants potentially implicated in the fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

The elements of common law fraud under New York law are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." Woods v. Maytag Co., 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011). To comply with the particularity requirement for alleged misrepresentations, the "[p]laintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state where, when and to whom the statements were made; and (4) explain why the

statements were fraudulent." Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010).

Arroyo's fraud-based claims fail for several reasons. First, the Amended Complaint lodges allegations against "Defendants" generally. This is insufficient. See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 526-27 (E.D.N.Y. 2011) (allegations regarding fraud in the inducement did not satisfy Rule 9(b) because they lumped defendants together); Alnwick v. European Micro Holdings Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (same). That all Defendants but PHH have been voluntarily dismissed since the filing of the Amended Complaint does not rectify the generalities of Arroyo's allegations given the required level of specificity.

Second, the Amended Complaint references various promises or representations, but without much context and only in very general terms. See Arista Tech., Inc. v. Arthur D. Little Enters., Inc., 125 F. Supp. 2d 641, 647 (E.D.N.Y. 2000) ("[W]ithout more information, a defendant reading these assertions would be aware only of vague allegations of unstated misrepresentations, assurances, and efforts."). Moreover, while the Amended Complaint includes some time frames, the Court is left to guess as to when certain other events occurred. See DeSilva, 770 F. Supp. 2d at 526 ("[P]laintiffs' vague allegation

that the alleged misstatements were made 'repeatedly' over the course of ten years is not sufficient under Rule 9(b) to state a claim for mail fraud."); Alnwick, 281 F. Supp. 2d at 640 ("[V]ague window of time is insufficient to satisfy the pleading standards of rule 9(b).") For example, the fraudulent concealment claim asserts that "Defendants used fraud and artifice to lure Plaintiffs into defaulting on their mortgages by promising future opportunities for loan modifications when they had no intention of providing such permanent modifications." (Am. Compl. ¶ 73.) It is not clear what "artifice" the Amended Complaint is alleging nor when, exactly, this fraud allegedly occurred.

Accordingly, PHH's motion to dismiss Arroyo's fraud-based claims is GRANTED, and such claims are DISMISSED WITHOUT PREJUDICE.[7]

F. GBL § 349

PHH also moves for dismissal of Arroyo's claim for violation of New York's GBL § 349 because Arroyo's claim is time-barred and because she has otherwise failed to state a claim. The Court partially agrees.

---

[7] PHH also argues that Arroyo's fraudulent concealment claim independently fails because PHH did not owe Arroyo a fiduciary duty. While this may very well be true, without the requisite level of specificity, the Court will not determine the merits of Arroyo's claim.

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). "To state a claim under Section 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" Kapsis, 923 F. Supp. 2d at 449 (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)).

Claims under this section are subject to a three-year statute of limitations. To the extent Arroyo's claim relates to loan origination, which occurred in 2009 (see Kolodny, Docket Entry 33-1, Decl. Ex. 12), her claim is time-barred, and Arroyo implicitly concedes as much. See Knox v. Countrywide Bank, --- F. Supp. 2d ----, 2014 WL 946635, at *7 (E.D.N.Y. Mar. 12, 2014) (stating a three-year statute of limitations); (Pl.'s Opp. Br. at 23 (arguing that Arroyo's GBL claims relate only to modification efforts)).

Arroyo, however, also alleges that PHH violated the GBL "by misrepresenting a material fact to Plaintiffs by failing to state that their mortgages would be assigned or insured and bundled in such a way that there would be no bank having an interest in working with the Plaintiffs in the event they needed a forbearance or modification agreement despite Plaintiffs'

qualifications." (Am. Compl. ¶ 108.) PHH raises several arguments in response, arguing particularly that Arroyo has failed to allege consumer-oriented conduct and that she does not sufficiently allege that the acts were misleading in a material way. Although the Amended Complaint lacks some detail, the Court finds that Arroyo has sufficiently alleged the first two elements of her GBL claim.

Specifically, consumer-oriented conduct is "conduct that potentially affects similarly situated consumers." Kapsis, 923 F. Supp. 2d at 449 (internal quotation marks and citation omitted). "To satisfy this requirement in the context of a real estate transaction, courts have generally required that a plaintiff allege that the defendant affirmatively and publicly sought transactions with consumers." Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011) (collecting cases). Moreover, "[p]rivate contract disputes, unique to the parties, for example, [do] not fall within the ambit of [Section 349]." Id. at 410 (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 532 (N.Y. 1995) (alterations in original)). Here, though, Arroyo alleges that PHH had a loan modification program that was a ruse and that PHH essentially had a policy of not stating the insurance structure and alleged lack of incentive to modify. Although inartfully

pled, the Amended Complaint also references that PHH marketed that modification would be a viable option for homeowners. (Am. Compl. ¶ 26.)

Moreover, the Amended Complaint at least plausibly alleges that such misrepresentation was material. Whether a misrepresentation is materially misleading is determined according to the reasonable consumer standard. See Karakus, 941 F. Supp. 2d at 340. The Amended Complaint sufficiently alleges that a reasonable consumer would be misled into believing that modification is a viable option, when in fact--according to Arroyo--PHH had no intention of pursuing such.

Arroyo's claim is deficient, however, in that it fails to allege the third element of a claim pursuant to Section 349, namely injury caused by the material misrepresentation. The Amended Complaint conclusorily alleges that "[t]he unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and consumers at large." (Am. Compl. ¶ 112.) Arroyo's GBL claim does not expound upon this allegation, and PHH is left to guess where or how exactly, based on the 142 paragraphs of the Amended Complaint, Arroyo intends to allege injury. Alleging causation, and how the alleged acts have caused the alleged injury, is essential. Abraham, 947 F. Supp.

2d at 234-35.  Arroyo's claim fails, though, as she has not even

alleged what the injury was.[8]

Accordingly, PHH's motion to dismiss Arroyo's GBL

claim is GRANTED, and such claim is DISMISSED WITHOUT PREJUDICE.

G. TILA Claim

PHH also moves to dismiss Arroyo's TILA claim as time-

barred.  The Court agrees.

Arroyo alleges that:

Defendants fraudulently induced Plaintiffs
to enter into unduly burdensome mortgage
loans by misrepresenting or withholding
material information.  In particular:

A. Required insufficient financial
documentation, or disregarded critical
aspects of Plaintiffs' loan applications, to
adequately determine a borrower's income and
financial capability to make all payments
through the life of a loan, when approving
Plaintiffs for a mortgage.

B. Encouraged exaggerated incomes by
certain Plaintiffs because Defendants'
underwriting guidelines permitted them to
lend more money, allowing Defendants to
garner more interest than would otherwise
have been possible.

---

[8] In her opposition, Arroyo asserts that the injuries were lost
opportunities in considering "alternatives to foreclosure or
stripped equity in the form of payments".  (Pl.'s Opp. Br. at
23.)  Arroyo cannot amend her complaint through her opposition
briefs, and she has shown an ability to adequately allege
damages or injury in other parts of the Amended Complaint. See
Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y.
2005) ("It is longstanding precedent in this circuit that
parties cannot amend their pleadings through issues raised
solely in their briefs.").  (See, e.g., Am. Compl. ¶ 66.)

> C. Failed to disclose escrow charges for taxes and insurance from Plaintiffs' disclosed monthly mortgage payment to make the payment seem more affordable.
>
> D. Offered mortgage loans that Plaintiffs could not afford to service, but were nonetheless made, because Defendants adequately collateralized such loans, which amounts to improper asset-based lending.
>
> E. Inappropriately made assurances regarding not only the stability of the housing market, and grossly exaggerated expected growth in housing prices. Plaintiffs were induced to accept loan terms because there would always be an option to sell their homes at a profit, or else refinance it with more favorable terms.

(Am. Compl. ¶ 129.)

TILA has a one-year statute of limitations. 15 U.S.C. § 1640(e); see Knox, 2014 WL 946635, at *8. Accordingly, PHH appropriately argues that Arroyo's TILA claim is time-barred. In response, Arroyo asserts that her claim should be tolled until the time of discovery. (Pl.'s Opp. Br. at 23-24.) However, courts have made abundantly clear that the statute of limitations runs from the time of the occurrence, not the time of discovery. See McAnaney v. Astoria Fin. Corp., No. 04-CV-1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007) (noting that it is "well-settled" that the discovery rule does not apply in closed-end transactions such as mortgages); Johnson v. Scala, No. 05-CV-5529, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) ("Case law supports the notion that the statute of limitations

for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan." (collecting cases)).

Moreover, the Court notes that equitable tolling is potentially available to toll the statute of limitations for TILA claims. See, e.g., Grimes v. Fremont General Corp., 785 F. Supp. 2d 269, 286-87 (S.D.N.Y. 2011). Arroyo, however, has not asserted equitable tolling and has therefore abandoned this argument. See McDonald v. City of N.Y., 786 F. Supp. 2d 588, 613 (E.D.N.Y. 2011). Moreover, "'[e]quitable tolling is available in rare and exceptional circumstances, where the court finds that extraordinary circumstances prevented the party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll.'" Grimes, 785 F. Supp. 2d at 286 (quoting Williams v. Aries Fin., LLC, No. 09-CV-1816, 2009 WL 3851675, at *6 (E.D.N.Y. Nov. 18, 2009)). The Amended Complaint is wholly devoid of any allegations regarding diligence on Arroyo's part. Moreover, the fraudulent conduct must go beyond the nondisclosure itself. Id.; see also Gorbaty v. Wells Fargo Bank, N.A., Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260, at *8 (E.D.N.Y. Apr. 18, 2012) (collecting cases).

Accordingly, Arroyo's TILA claim is time-barred, PHH's motion to dismiss is GRANTED in this regard, and her TILA claim is DISMISSED WITH PREJUDICE.

H. RESPA Claim

Finally, PHH moves for dismissal of Arroyo's RESPA claim, arguing that this claim is also time-barred and that Arroyo otherwise fails to appropriately state a claim. The Court agrees that dismissal is appropriate.

There are three private causes of action under RESPA-- actions pursuant to Sections 2605, 2607, and 2608. (See 12 U.S.C. ¶¶ 2605, 2607, 2608.) The Amended Complaint references Sections 2603, 2604, and 2607. To the extent that the Amended Complaint references Sections 2603 and 2604, Arroyo cannot properly state a private cause of action. (See Am. Compl. ¶ 140.) To the extent that the Amended Complaint raises a claim pursuant to 2607, which prohibits kickbacks and unearned fees, that section is subject to a one-year statute of limitations. See Grimes, 785 F. Supp. 2d at 289. Like Arroyo's alleged TILA claim, the statute of limitations begins running from the date of occurrence. See id. Moreover, although subject to potential equitable tolling, Arroyo has not argued for such nor shown that tolling is appropriate. See id. Therefore, her claim pursuant to Section 2607 is DISMISSED WITH PREJUDICE.

In addition, despite the fact that the Amended Complaint makes no reference to Section 2605, Arroyo's opposition argues that PHH has misconstrued the Amended Complaint to assert a claim pursuant to Section 2607 and that Arroyo has clearly stated a claim pursuant to Section 2605. (See Pl.'s Opp. Br. at 24.) "Under Section 2605 of RESPA, a debtor may submit a QWR [qualified written request] to the servicer of its loan for 'information relating to [ ] servicing.'" Kapsis, 923 F. Supp. 2d at 444 (quoting 12 U.S.C. § 2605(e)(1)(A)) (second alteration in original). "To survive a motion to dismiss, a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify damages that he or she sustained as a result of defendant's alleged violation(s)." Id. Here, Arroyo's RESPA claim makes no reference to Section 2605, any particular QWRs, nor the alleged damages. Arroyo asserts that she has "stated specifics concerning [her] QWR submissions as well as the nature of Defendant's suspected violations, including accounting and ownership issues." (Pl.'s Opp. Br. at 24.) The Court, however, will not scour the Amended Complaint and attempt to piece Arroyo's claim together for her. See Chylinski v. Bank of Am., 630 F. Supp. 2d 218, 224 (D. Conn. 2009) ("The court will not, however, further scour the letter for facts that could support [plaintiff's] sex discrimination

claims.  To do so would be unfair to the defendant, which is entitled to fair notice of the grounds on which [plaintiff's] claim rests so that it can defend itself against [plaintiff's] claim.").

Accordingly, PHH's motion to dismiss Arroyo's RESPA claim is GRANTED.  Her claim pursuant to Sections 2603, 2604, and 2607 are DISMISSED WITH PREJUDICE and any additional claims under RESPA are DISMISSED WITHOUT PREJUDICE.

III.  Amendment

Although Arroyo has not specifically moved to amend her complaint again, courts should grant leave to amend "when justice so requires."  FED. R. CIV. P. 15(a)(2).  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

The Court finds that, as to Arroyo's claims that have been dismissed without prejudice, she should be given one final opportunity to assert her claims.  These claims were primarily

dismissed due to insufficient pleadings which could potentially be rectified through amendment.

CONCLUSION

For the foregoing reasons, PHH's motion to sever is GRANTED and McMahon's claims are DISMISSED WITHOUT PREJUDICE to commencing a separate action. If McMahon wishes to do so, she must commence a separate action within thirty (30) days of the date of this Memorandum and Order. Additionally, the statute(s) of limitations for any of her claims is tolled for a period of thirty (30) days from the date of this Memorandum and Order.[9]

Moreover, PHH's motion to supplement is GRANTED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

---

[9] Such tolling, however, will not affect any of her claims that were barred by the statute of limitations when this action was originally commenced.

Finally, PHH's motion to dismiss is GRANTED IN PART and DENIED IN PART.  It is DENIED as to standing, but otherwise GRANTED.  Arroyo's claims for breach of the covenant of good faith and fair dealing, violation of TILA, and violation of RESPA Sections 2603, 2604, and 2607 are DISMISSED WITH PREJUDICE.  Arroyo's additional claims are DISMISSED WITHOUT PREJUDICE and with leave to replead.  If she chooses to do so, she must file a Second Amended Complaint within thirty (30) days of the date of this Memorandum and Order.  If she does not timely do so, her claims will be dismissed with prejudice and the case will be closed.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     May   19  , 2014
           Central Islip, NY